# No. 25-20236

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Tracy Brian Brown,

Plaintiff - Appellant

v.

Floyd Winkler; Ken Paxton; Kim Ogg; City of Houston, Texas; Harris County, Texas,

Defendants – Appellees

---

**On Appeal from**

United States District Court for the Southern District of Texas

4:24-CV-2670

---

## BRIEF OF APPELLANT TRACY BROWN

---

SUBMITTED BY:

Tracy Brian Brown
Pro Se
3814 Pebble Garden Lane
Katy, TX 77449

# CERTFICATE OF INTERESTED PERSONS

The undersigned of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
| --- | --- |
| City of Houston, Texas | Donald Hightower of City of Houston Houston, TX |
| Harris County, Texas | Veronica Jones of Harris County Attorney's Office Houston, TX |
| Kim Ogg | Veronica Jones of Harris County Attorney's Office Houston, TX |
| Ken Paxton | Martin Arroyo of Office of the Attorney General of Texas Austin, TX |
| Floyd Winkler | Donald Hightower of City of Houston Houston, TX |
| Floyd Winkler | Arturo Michel of City of Houston Houston, TX |

| **Appellants:** | **Pro Se Appellants:** |
| --- | --- |
| Tracy Brown | Tracy Brown Katy, TX |

S/Tracy Brian Brown
Pro Se

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Tracy Brown chooses to waive oral argument in this case because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

Contents Pages


CERTIFICATE OF INTERESTED PERSONS ……………………………………ii

STATEMENT REGARDING ORAL ARGUMENT …………………………...iii

TABLE OF CONTENTS …………………………………………………………iv

TABLE OF AUTHORITIES ……………………………………….……………..vi

JURISDICTIONAL STATEMENT ………………………………………………1

STATEMENT OF THE ISSUES ……………………………………………….1

STATEMENT OF THE CASE ……………………………………………………2

SUMMARY OF THE ARGUMENT ……………………………………………..3

ARGUMENT ………………………………………………………………….……..5

I. The Trial Court Abused Its Discretion When It Denied Appellant's Motions For Default Judgment and/or to Strike The Rule the Rule 12(b)(6) Motions Filed By Appellees City of Houston and Floyd Winkler, Because Both Appellees Sought Dismissal of The Complaint That Was Not The Operative Pleadings, And In The City's Case, One io Which It Was Not Even a Party……..5

II. The District Court Abused Its Discretion by Granting Appellees Kim Ogg and Harris County Dismissal Despite Their Failure to Properly Respond to the Operative Complaint……………………………………………………………13

III. The Trial Court Abused Its Discretion When It Denied Appellant's Motion For Leave To Amend The Complaint, In That:

(a) It failed to enter findings of facts and conclusions of law, and …24

(b) Appellant's act of amending to add prospective relief to conform to the Ex parte Young doctrine was clearly in the interest of justice………………………………………………………26

IV. The Trial Court Abused Its Discretion When it Granted Appellees City of Houston and Floyd Winkler A Stay of Discovery, In That:

(a) They never requested a stay ……………………………………...29

(b) The appellees defaulted and should not have been entitled to a stay, and ……………………………………………………..30

(c) They are not arms of the state and were not entitled to a stay based on sovereign immunity under the 11th Amendment ………31

V. The District Court Deprived Appellant—a Pro Se Litigant—of a Meaningful Opportunity to Be Heard at the Motion Hearing, Allowing Erroneous Conduct to Bleed into Its Dismissal Order Without Real Evaluation ……………………………………………………………….32

VI. The District Court Erred When It Granted The Appellees' Motions To Dismiss Pursuant To Rule 12(b)(6), In That:

(a) The court entered a *sua sponte* dismissal of Plaintiff's § 1983 claims with prejudice without first providing plaintiff notice of its intentions, and an opportunity to respond ……….……..45

(b) The court subjected Appellant to a 'favorable determination requirement' that was specifically overruled by the US Supreme Court in *Thomspon v. Clark* ………………….……....46

(c) The court raised, sua sponte, the affirmative defense of statute of limitation in an ordinary civil case where Appellant is not a prisoner, nor proceeding in forma pauperis, and ……………………………………………….………48

*(d)* The court miscalculated the accrual date on Plaintiff's § 1983 claims, in direct contravention to the US Supreme Court's decisions in *Heck v. Humphrey*, *McDonough v. Smith*, and even *Thompson v. Clark ……………………………....50*

CONCLUSION …………………………………………………………..52

CERTIFICATE OF SERVICE ……………………………………………..56

CERTIFICATE OF COMPLIANCE ……………………………………56

# TABLE OF AUTHORITIES

*Alden v. Maine*,
527 U.S. 706 (1999) ……………………………………………………..31, 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ………………………………………………………40

*Aucoin v. Cupil*,
958 F.3d 379 (5th Cir. 2020) ……………………………………………52

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*,
306 F.2d 862 (5th Cir. 1962) …………………………………9, 12, 16

*Bazrowx v. Scott*,
136 F.3d 1053 (5th Cir. 1998) ……………………………..……25, 27, 46

*Brady v. Maryland*,
373 U.S. 83 (1963) ……………………………………………………….26, 51

*Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*,
421 F.3d 314 (5th Cir. 2005) ……………………………………………28

*Brewster v. Dretke*,
587 F.3d 764 (5th Cir. 2009) …………………………………………..25, 27

*Brown v. City of Houston*,
297 F. Supp. 3d 748 (S.D. Tex. 2017) ………………………………….51

*Carmouche v. Hooper*,
77 F.4th 362 (5th Cir. 2023) ……………………………………………24

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) …………………………………...46, 48

*Carver v. Wood*,
18 F.4th 494, 496 (5th Cir. 2021) ………………………………………48

*Conley v. Gibson*,
355 U.S. 41 (1957) ……………………………………………………...24

*Connors v. Graves*,
538 F.3d 373 (5th Cir. 2008) ....................................................52

*Corwin v. Marney, Orton Inv.*,
843 F.2d 194 (5th Cir. 1988) ....................................................28

*Davis v. Huskipower Outdoor Equip. Corp.*,
936 F.2d 193 (5th Cir. 1991) ....................................................49

*Eason v. Holt*,
73 F.3d 600 (5th Cir. 1996) ....................................................9, 39

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ....................................................24

*Equal Access for El Paso, Inc. v. Hawkins*,
562 F.3d 724 (5th Cir. 2009) ....................................................27

*Eriline Co. v. Johnson*,
440 F.3d 648 (4th Cir. 2006) ....................................................49

*Ex parte Young*,
209 U.S. 123 (1908) ....................................................23

*Fields v. Wharrie*,
565 U.S. 350 (2012) ....................................................41

*Hainze v. Richards*,
207 F.3d 795 (5th Cir. 2000) ....................................................52

*Haines v. Kerner*,
404 U.S. 519 (1972) ....................................................39

*Hebert v. United States*,
53 F.3d 720 (5th Cir. 1995) ....................................................45

*Heck v. Humphrey*,
512 U.S. 477 (1994) ....................................................42, 50

*Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*,
79 F.4th 464 (5th Cir. 2023) ......................................................25

*Howard v. King*,
707 F.2d 215 (5th Cir. 1983) ......................................................41
*In re Terra*

*Jacobsen v. Osborne*,
133 F.3d 315 (5th Cir. 1998) ......................................................24

*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) ......................................................9, 12, 16

*Kiser v. Johnson*,
163 F.3d 326 (5th Cir. 1999) ......................................................49

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,
901 F.2d 404 (5th Cir. 1990) ......................................................29

*Lebouef v. Island Operating Co., Inc.*,
342 F. App'x 983 (5th Cir. 2009) ......................................................49

*Lewis v. Lynn*,
236 F.3d 766 (5th Cir. 2001) ......................................................8

*Lindsey v. Prive Corp.*,
161 F.3d 886 (5th Cir. 1998) ......................................................11, 30

*Lozano v. Ocwen Fed. Bank, FSB*,
489 F.3d 636 (5th Cir. 2007) ......................................................39, 46, 48

*Mason v. Lister*,
562 F.2d 343 (5th Cir. 1977) ......................................................8

*Matthews v. Eldridge*,
424 U.S. 319 (1976) ......................................................39

*McCoy v. Louisiana*,
584 U.S. 414 (2018) ......................................................20

*McDonough v. Smith*,
588 U.S. 109 (2019) ..........................................................51

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ..........................................................31

*N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ..................................................28

*Nishimatsu Constr. Co. v. Hous. Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975) .................................................13

*Ogbebor v. Hardy*,
No. 24-30403 (5th Cir. Mar. 2025) ..........................................48

*Petrus v. Bowen*,
833 F.2d 581 (5th Cir. 1987) ..................................................29

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) ..........................................................27

*Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Tex.*,
260 F. Supp. 3d 738 (S.D. Tex. 2017) ..................................31, 32

*Thompson v. Clark*,
596 U.S. 36 (2022) .........................................................47, 48

*Tr. V Avigilon Corp.*,
No. 2:10-CV-605, 2012 WL 12828858 (E.D. Tex. Mar. 9, 2012) .........31

*United States ex rel. Adrian v. Regents of Univ. of Cal.*,
363 F.3d 398 (5th Cir. 2004) ..................................................26

*United States v. Coney*,
689 F.3d 365 (5th Cir. 2012) ....................................................9

*Warnock v. Pecos Cnty.*,
116 F.3d 776 (5th Cir. 1997) ..................................................49

*Williams v. Town of Delhi*,
No. 14-00043, 2015 WL 868746 (W.D. La. Feb. 27, 2015) ....................52

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ..............................................32, 45

*Wright v. City of Houston*,
No. 2:22-CV-2225(S.D. Tex.) ..............................................10

Statutes & Constitutional Provisions

28 U.S.C. § 1291 ..............................................1
42 U.S.C. § 1983 ..............................................2, 4, 51, 52
42 U.S.C. § 1985 ..............................................2, 4
Tex. Code Crim. Proc. Art. 11.07 ..............................................18
Tex. Code Crim. Proc. Art. 55.01 ..............................................41
Tex. Gov't Code §552.028(a) ..............................................19, 22, 23, 26
Tex. Gov't Code §552.028(b) ..............................................19, 22, 23, 26
Tex. Gov't Code §552.108(a)(2)..............................................19, 22, 23, 26
U.S. Const. art. VI, cl. 2 (Supremacy Clause) ..............................................27

Rules

Fed. R. Civ. P. 8(b) ..............................................1, 6, 15, 16, 30
Fed. R. Civ. P. 10(c) ..............................................40
Fed. R. Civ. P. 12(b)(6) ..............................................1, 6, 9, 18, 40
Fed. R. Civ. P. 12(f) ..............................................12
Fed. R. Civ. P. 15(a)(1)(B) ..............................................6, 7
Fed. R. Civ. P. 15(a)(2) ..............................................2, 4
Fed. R. Civ. P. 15(a)(3) ..............................................12, 13, 15, 17
Fed. R. Civ. P. 26(c)(1) ..............................................4, 29
Fed. R. Civ. P. 28(a)(5) ..............................................1
Fed. R. Civ. P. 55 ..............................................31

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as it arises from a final order of the district court granting Appellees' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on March 27, 2025, which dismissed all claims against all parties. ROA.1754. On April 23, 2025, Appellant moved for reconsideration. ROA.1754. The court denied reconsideration on May 12, 2025. ROA.2287. On June 9, 2025, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(4)(A), Appellant timely filed a notice of appeal. ROA.2288.

## STATEMENT OF THE ISSUES

Pursuant to Rule 28(a)(5) of the Federal Rules of Appellate Procedure, Appellant identifies the following issues in this appeal:

1. Whether the district court abused its discretion by denying Appellant's motions for default judgment and/or to strike the Rule 12(b)(6) motions filed by Appellees City of Houston and Floyd Winkler, despite both defendants having failed to respond to the operative complaint and instead filing motions directed at superseded pleadings.

2. Whether the district court abused its discretion by granting dismissal in favor of Appellees Harris County and Kim Ogg, where they responded only to an incomplete version of the complaint uploaded by the Clerk, failed to properly answer the operative complaint they were served, and later attempted to amend without leave of court.

3. Whether the district court abused its discretion in denying Appellant's motion for leave to amend, where the amendment sought to cure jurisdictional defects under *Ex Parte Young*, was clearly in the interest of justice, and the court failed to provide any findings of fact or conclusions of law in support of its denial.

4. Whether the district court abused its discretion by granting Appellees City of Houston and Floyd Winkler a stay of discovery based solely on Ken Paxton's motion, where they had defaulted, filed no stay request of their own, and as non–arms of the state were not entitled to Eleventh Amendment immunity.

5. Whether the district court deprived Appellant, a pro se litigant, of due process by refusing to consider complaint-referenced exhibits, curtailing rebuttal at the March 20, 2025 motion-to-dismiss hearing, and then incorporating counsel's misstatements into its dismissal order without evaluating the operative pleadings and evidence.

6. Whether the district court erred in granting Appellees' motions to dismiss by (a) dismissing sua sponte on grounds not raised by Appellees without notice or opportunity to respond, (b) applying a favorable termination requirement overruled by the Supreme Court in *Thompson v. Clark*, (c) raising sua sponte the affirmative defense of statute of limitations in an ordinary civil case, and (d) miscalculating the accrual date of Appellant's § 1983 claims contrary to *Heck, McDonough*, and *Thompson.*

## STATEMENT OF THE CASE

Appellant Tracy Brown filed this action under 42 U.S.C. §§ 1983 and 1985, alleging that his 1992 conviction for delivery of a controlled substance—resulting in over 32 years of imprisonment—was obtained through fabricated evidence, perjured testimony, and misconduct by law enforcement, prosecutors, and his court-appointed defense counsel. Brown contends that exculpatory evidence was withheld for decades, depriving him of due process and equal protection.

On March 27, 2025, the district court granted the Appellees' motions to dismiss under Rule 12(b)(6), holding that Brown lacked standing and that his claims were time-barred. ROA.1743-1745 On April 23, 2025, Brown moved for reconsideration (ROA.1754), which the court denied on May 12, 2025. ROA.2287. Brown filed a timely notice of appeal on June 9, 2025. ROA.2288.

This appeal challenges the district court's rulings, including: (1) granting dismissal to the City and Officer Winkler, who moved against a superseded complaint; (2) granting dismissal to Harris County and Kim Ogg, who responded only to an incomplete version of the operative complaint; (3) denying leave to amend to cure jurisdictional defects under Ex parte Young; (4) granting a discovery stay based on sovereign immunity to parties who had defaulted, did not request a stay, and were not arms of the state; and (5) The court dismissed sua sponte on standing and statute of limitations grounds not raised by Appellees, without evaluating the sufficiency of the complaint's allegations (ROA.1745).

## SUMMARY OF THE ARGUMENT

This appeal is about evenhanded application of the rules: after repeated notice and valid service, the City and Winkler litigated a superseded pleading while the court held a pro se litigant to stricter process—an asymmetry that the record shows was not accidental. First, the court erred in denying default judgment and by refusing to strike motions filed by the City and Floyd Winkler that targeted

superseded pleadings rather than the operative Secon Amended Complaint ("SAC"). Allowing that noncompliance prejudiced Appellant by forcing wasted briefing and delaying adjudication of the live claims.

Second, the court dismissed the claims against Harris County and Kim Ogg even though they did not respond to the operative complaint. They addressed only an incomplete docket copy caused by a clerical error, then attempted to amend without leave; their procedural defaults were admitted on the record, yet the court credited the defective filings.

Third, the court abused its discretion by denying leave to amend without explanation. Appellant's amendment sought prospective relief against Attorney General Paxton under *Ex parte Young* and challenged statutes that obstructed access to Brady material. The amendment cured jurisdictional defects and served the interests of justice.

Fourth, the court improperly extended a blanket discovery stay to the City and Winkler—who neither moved for such relief nor showed good cause under Rule 26(c)—and who are not arms of the State entitled to Eleventh Amendment immunity. The stay prejudiced Appellant by delaying discovery essential to his § 1983 and § 1985 claims.

Fifth, the court's handling of the March 20, 2025 motion-to-dismiss hearing denied a meaningful opportunity to be heard and then shaped the judgment. The

court refused to consider complaint-referenced exhibits, curtailed rebuttal, and adopted counsel's misstatements about expunction and limitations. Those procedural missteps bled into the order entered a week later, which echoed those points and dismissed on grounds the Appellees had not raised.

Finally, the court dismissed Appellant's claims sua sponte on standing and limitations, misapplying the favorable-termination rule overruled in Thompson v. Clark, raising a waivable limitations defense in an ordinary (non-IFP) civil case, and miscalculating accrual contrary to *Heck*, *McDonough*, and *Brown v. City of Houston*. Each error independently warrants reversal; together they show prejudice and a denial of due process requiring vacatur

## I. The trial court abused its discretion when it denied Appellant's motions for default judgment and/or to strike the Rule 12(b)(6) motions filed by Appellees City of Houston and Floyd Winkler, because both appellees sought dismissal of complaints that were not the operative pleadings, and in the City's case, one to which it was not even a party.

**Facts in support**

The Original Complaint was filed July 17, 2024. ROA.12. Appellant originally listed the City of Houston ("City" or "COH") as one of the defendants (ROA.12). Before serving any defendants with suit however, Appellant would amend the original complaint on July 23, 2024, removing the City of Houston as a

named defendant, and adding the Houston Police Department {"HPD") in its stead. ROA 612. Appellant would then serve all named defendants in the suit.

On August 15, 16 and 19, 2024, Harris County Kim Ogg, HPD, and Ken Paxton would all file motions to dismiss pursuant to Rule 12(b)(6). ROA.653, 678 and 701, respectively.

On September 4, 2024, less than 21 days after the first Rule 12(b)(6) motion to dismiss was filed, Appellant would file his Second Amended Complaint ("SAC") pursuant to Rule 15(a)(1)(B). ROA.716. In the amendment, Appellant would specifically drop HPD as a defendant, adding the City of Houston back to the suit. *Id.*

On September 5, 2024, the next day, Appellant, in his Consolidated Opposition to the Defendants-Appellees' first Rule 12(b)(6) motions to dismiss, directly informed the Appellees and the attorney for the City that he amended the complaint pursuant to 15(a)(1)(B) (ROA.773), stating:

> "This amendment is Brown's first after serving the defendants, and is within 21 days from the date of the earliest 12(b)(6) motion filed in this case.
>
> ….
>
> Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(a)(1) grants a party the right to "amend its pleading once as a matter of course," if done within 21 days after serving the pleading, Fed. R. Civ. P. 15(a)(1)(A), or "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B)."

ROA.775.

On September 6, 2024 Appellant served the COH by mailing a copy to Patricia Daniels, the City Secretary, and sending a copy of the amendment via email to attorney Joy Thomas, the attorney who was assigned to originally represent HPD. ROA.1402. That same day Appellant hired Mr. Barry Dunn, of the Real Texas PI company to serve Appellee Floyd Winkler with process. ROA.1403.

On September 10, 2024, Mr. Dunn served Appellee Winkler with process. ROA.1404. The documents served were (1) the SAC, (2) Summons, and (3) Orders from the Court. ROA.1403-1404.

The City of Houston would fail to timely respond, and on October 2, 2024, Appellant would send an email to Attorney Joy Thomas, inquiring as to why the city had failed to answer the complaint. ROA.1406. Appellant would receive no response.

On October 1, 2024 Winkler would file a Rule 12(b)(6) Motion to Dismiss. ROA.953. Instead of moving to dismiss plaintiff's SAC, the operative complaint served, Winkler moved to dismiss Plaintiff's First Amended Complaint. ROA.953.

On October 7, 2024, Appellant served another copy of the SAC upon the City, by serving Patricia Daniels the City Secretary, at 900 Bagby St., Houston, Texas 77002, by certified mail return receipt. ROA.1409. The City would again refuse to respond.

On November 22, 2024, Appellant would personally serve the City, by serving Carrie Roberts, City Secretary. ROA.1410-1412. Appellee's answer was due on December 13, 2024. *Id.*

On December 13, 2024, Appellant would receive a phone call and email from attorney Joy Thomas, asking whether Appellant would oppose an extension of time for the city to respond to his complaint. ROA.1413. Appellant would speak with counsel that evening, and inform her that he would not oppose said motion, and followed up by sending an email stating the same. ROA.1414.

Later that evening, Appellant would learn that the City moved to dismiss the First Amended Complaint (ROA.1379), instead of the second amended complaint. ROA.1379.

**Standards of Review**

This Court reviews a denial of a default judgment for abuse of discretion. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001); *See Mason v. Lister,* 562 F.2d 343, 345 (5th Cir.1977) ("[T]he entry of default judgment is committed to the discretion of the district judge.").

This Court also reviews a denial of a motion to strike for abuse of discretion. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir.2012). "The motion to strike should be granted only when the pleading to be stricken has no possible relation to

the controversy." *Augustus v. Bd. of Pub. Instruction,* 306 F.2d 862, 868 (5th Cir.1962).

## Argument and Authorities

The district court abused its discretion by denying Appellant's motions for default judgment and/or to strike the Rule 12(b)(6) motions filed by the City and Floyd Winkler, because both failed to respond to the operative complaint and instead pursued motions directed at superseded pleadings.

### A. The City of Houston Defaulted and Engaged in Inconsistent Litigation Conduct

It is well-settled in this Circuit that an amended complaint supersedes the prior complaint and renders it of no legal effect. See *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996). Accordingly, when Appellant filed his Second Amended Complaint (ROA.716), that pleading became the operative complaint. The City, however, filed a Rule 12(b)(6) motion directed at the First Amended Complaint—a pleading to which it was not even a named defendant. Because the First Amended Complaint was legally superseded, the City's motion was moot and should have been stricken.

The City's litigation conduct was inconsistent, prejudicial, and suggestive of a deliberate strategy to delay on the part of the City. Initially, City attorney Joy Thomas appeared for the Houston Police Department (HPD), arguing HPD was not a suable entity and that the City was the proper defendant because,

> "Plaintiff's claims against HPD should be dismissed, because it is not a legal entity with the capacity to sue and be sued separate and apart from the City of Houston"

ROA.681. Based on this, Appellant amended his complaint to name the City ROA.716. Yet, despite multiple notices and service attempts—by email/mail on September 6, 2024 (ROA.1402), certified mail on October 7, 2024 (ROA.1409), and personal service on November 22, 2024 (ROA.1410-1412)—the City responded only to the superseded First Amended Complaint (ROA.1379).

Appellant went out of his way to assist the City. On September 5, 2024, Appellant explicitly notified the City that his amendment was timely under Rule 15(a)(1)(B) (ROA.775), and on December 13, 2024, he granted the City an unopposed extension to respond. ROA.1414. The City's persistent failure to address the operative complaint, despite these notices, suggests a calculated effort to exploit procedural errors, a tactic it has employed against other pro se litigants. See, e.g., *Wright v. City of Houston, No.* 4:22-CV-2225 (S.D. Tex.) (where the City similarly delayed by challenging service in a pro se case).

The City's conduct clearly meets the criteria for default judgment under *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998), as shown below. First, the City's default was willful. Fifth Circuit disfavors default but requires it for willful failure. *Lacy v. Sitel Corp.,* 227 F.3d 290 (5th Cir. 2000). Despite four service attempts and clear notification of the operative complaint's timeliness (ROA.775),

the City chose to address a superseded pleading it had previously rejected as inapplicable. ROA.681. This mirrors its pattern of seeking dismissals for improper service in prior pro se cases, evidencing intentional delay. Second, Appellant suffered substantial prejudice. As a pro se litigant facing four other defendants, including governmental entities, Appellant expended significant time and resources drafting responses to the City's moot motion, duplicating litigation efforts and delaying resolution of his claims. Third, the City's motion against a superseded complaint offers no meritorious defense to the operative pleading, as it fails to engage with the live claims. See Lindsey, 161 F.3d at 893 (default warranted where defendant's failure is willful, plaintiff is prejudiced, and no meritorious defense is presented).

The district court's denial of default judgment rewarded this strategic delay, ignoring the Federal Rules' requirement to address the operative pleading. At a minimum, the court should have stricken the City's motion under Rule 12(f). *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (motions unrelated to the controversy should be stricken). By granting a motion addressing a superseded complaint, the court abused its discretion, undermining the fair adjudication of Appellant's claims. In *Smith v. Edwards*, 88 F.4th 1119, 1124 (5th Cir. 2023), the Fifth Circuit held that vacatur is appropriate when a judgment rests on a moot issue, as fairness requires the ruling be tied to a live controversy.

Likewise, the district court's reliance on a motion directed at a superseded complaint undermines the adjudication of the operative claims. Vacating the dismissal is necessary to ensure the court's ruling addresses the correct, operative pleading rather than a moot one.

### B. Appellee Winkler's Motion Was Moot and His Default Was Clear

The same principle applies to Appellee Winkler. Appellant personally served Winkler with the SAC on September 10, 2024 (ROA.1403–1404). Nevertheless, Winkler filed a Rule 12(b)(6) motion directed at the First Amended Complaint—a pleading that had already been superseded. Fifth Circuit precedent makes clear that such motions are moot. See *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Because Winkler never filed a timely or proper response to the operative SAC, he defaulted.

Allowing Winkler to proceed on a motion aimed at a non-existent complaint not only violated Rule 15(a)(3)'s requirement to respond to the operative complaint, but also forced Appellant to waste resources addressing arguments that were legally void. This prejudiced Appellant by delaying adjudication of the actual claims, while Winkler effectively bought time by litigating against a nullified pleading. As with the City, the district court abused its discretion by declining to strike Winkler's motion or enter default.

### C. The District Court Has Abused Its Discretion

In both instances, the district court permitted defendants to proceed on motions directed at superseded complaints, contrary to controlling Fifth Circuit authority. This not only deprived Appellant of the orderly process guaranteed under Rule 15, but also caused concrete prejudice through wasted litigation efforts and delay. A defendant who fails to respond to the operative complaint defaults. See *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). The district court's refusal to enforce this principle constituted an abuse of discretion that warrants reversal.

## II. The District Court Abused Its Discretion by Granting Appellees Kim Ogg and Harris County Dismissal Despite Their Failure to Properly Respond to the Operative Complaint.

**Facts in support**

On September 4, 2024, when Appellant timely filed his SAC pursuant to Rule 15(a)(1)(B), he handed a 57-page complaint with exhibits to the Clerk's Office for filing. Due to clerical error, only 28 pages were uploaded to the docket, and the exhibits were not linked. Appellant nevertheless served the complete version of the SAC on Harris County, Kim Ogg, the City, and Ken Paxton by mail and email.

On September 18, 2024, Appellees Harris County and Kim Ogg filed a motion to dismiss that addressed only the incomplete 28-page version appearing on the docket, while ignoring the operative version that had been served. This particular version contained no causes of action, no signature block, no certificate of service,

nothing but the facts. Their motion argued that Appellant failed to identify a policymaker and policy causing the alleged harm, even though those allegations were included in the complete SAC, as well as in the first 28 pages.

On November 12, 2024 Appellant moved to correct the record. (ROA.1208), which was unopposed (ROA.1275). A couple of weeks later, Appellant would go to the District Clerk's Office informing them of the mistake made scanning in his document, and after a clerk examined the filings, the Clerk's Office would learn that appellant did submit a complete complaint, and re-scan the complete 57-page complaint into the docket on its own volition, without the court granting the motion to correct the record.

On February 5, 2025 Appellees Kim Ogg and Harris County filed their amended motions to dismiss to address the full 57-page complaint. ROA.1621.

On March 7, 2025, Appellant moved to strike Appellees' motion to dismiss, for failure to seek leave, and for sanctions for multiplying the proceedings. ROA.1681.

On March 14, 2025, Kim Ogg and Harris County filed their response to the motion to strike (ROA.1732), and moved for leave of court. ROA.1725.

On March 20, 2025 the trial court held a hearing on the Appellees' motions to dismiss (ROA. 2293), and at said hearing, attorney Joy Thomas would admit on the record that Brown did properly serve Kim Ogg and Harris County, stating

> "And there was some -- I've never seen -- I'll just be frank with the Court, I've never seen this kind of issue. It was kind of, I guess, a clerical filing error. He did serve me his second amended complaint, but what was filed, and what's before the Court, there were a different amount of pages. So, I'm like in my head what's before the Court and what's before me and what's filed is what he filed, which was 28 pages, not what was served. So I responded appropriately to what was filed."

ROA.2317. Counsel would also admit that Appellant did state who the policymaker was, who was responsible for the policies that caused him harm, stating

> "In his pleading, he does state that the District Attorney at the time of his prosecution was Johnny Holmes. And then in his complaint names Kim Ogg as a successor to Johnny Holmes."

ROA.2320-21

On March 27, 2025, the district court granted dismissal in favor of Appellees Harris County and Kim Ogg. The court did not grant Appellees Ogg and Harris County leave, nor did it grant Appellant's Motion to strike or for sanctions. ROA.1743.

**Standard of Review**

This Court reviews a motion to strike for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

## Argument and Authorities

### A. Appellees failed to properly respond under Rule 15(a)(3) and Rule 8(b).

The operative word in Rule 15(a)(3) is "served." Appellees were properly served with the complete 57-page SAC. Counsel admitted as much on the record.

ROA.2317. Their decision to respond only to the incomplete 28-page version uploaded by the Clerk did not satisfy their obligation under the Federal Rules. And by failing to address the claims in the operative complaint, Appellees defaulted under Rule 8(b) by not stating defenses to each claim.

**B. Appellees compounded their error by amending without leave.**

When Appellees realized their first motion was defective, they attempted to file an "amended" motion to dismiss without seeking leave of court. Only after Appellant moved to strike did they belatedly move for leave. This sequence violated Rule 15 and underscores the procedural impropriety of their filings. The district court abused its discretion in overlooking these violations.

**C. The district court should have stricken Appellees' defective motions.**

A motion to dismiss directed at an incomplete or superseded complaint is legally insufficient. *King v. Dogan*, 31 F.3d at 346. Because Appellees knowingly responded only to part of the complaint, their filing was immaterial and should have been stricken under Rule 12(f). See *Augustus v. Board of Pub. Instruction of Escambia Cnty., Fla.,* 306 F.2d 862, 868 (5th Cir. 1962). By failing to strike the motions, the court permitted Appellees to avoid answering the operative complaint and rewarded their disregard of the rules.

**D. Appellant suffered prejudice.**

Appellant was forced to litigate duplicative motions, respond to arguments directed only at part of his complaint, and expend resources correcting the record. Counsel admitted that Appellant had in fact identified a policymaker, undermining their central defense. ROA.2320-21. Yet the district court still dismissed the claims. This not only delayed resolution on the merits but also shifted the burden of a clerical error and Appellees' procedural defaults onto Appellant. Such prejudice underscores the abuse of discretion.

Because Appellees ignored the operative complaint they were served, failed to comply with Rule 8(b) and Rule 15(a)(3), and attempted to amend without leave, their Rule 12(b)(6) motions were procedurally improper and should have been stricken. The district court's refusal to strike these motions, despite clear admissions from counsel, and its decision to dismiss Appellant's claims on an incomplete record, constituted an abuse of discretion. Reversal is warranted.

## III. The trial court abused its discretion when it denied Appellant's motion for leave to Amend the complaint because (1) it failed to enter findings of facts and conclusions of law, and (2) Appellant's act of amending to add prospective relief to conform to the Ex parte Young doctrine was clearly in the interest of justice.

**Facts in Support**

Appellant brought *Brady* claims against the City and Ken Paxton ("Paxton") for the suppression and or obstruction of documents Appellant requested from the Houston Police Department, to use to challenge his conviction by way of a writ of

habeas corpus in the state courts. Specifically, Appellant requested the incident and offense reports in his criminal case to prove that he was subjected to the falsification of documents, fabrication of evidence, and perjury, by HPD officers who were involved with his arrest and the charges filed thereafter. Appellant needed the documents so that he could present a new "factual basis" to the trial court in a writ of habeas corpus pursuant to article 11.07, Code of Criminal Procedure. Appellant's first writ had been denied, and in order for him to proceed in a subsequent writ and overcome an abuse of writ bar, Appellant had to present a new "factual" or "legal" basis pursuant to sections 4(a)(1) and or 4(a)(2) of article 11.07.

For 28 years these Appellees would block Appellant from receiving said documents. Appellant first requested the reports in 1994, by filing a PIA[1]request with the HPD while he was incarcerated in TDCJ-ID[2]. ROA.504. HPD decided that it did not want to provide appellant with the documents and sought permission from the Attorney General's Office pursuant to §552.028 of the Texas Government Code. See e.g. ROA.517. HPD argued to Appellee Ken Paxton, that Appellant should be denied the reports based on the fact that Appellant was incarcerated. See e.g. ROA.532. Appellee Paxton granted HPD's request to deny the reports. See ROA.532.

[1] Public Information Act, also known as the Texas Open Records Act.
[2] The Texas Department of Criminal Justice—Institutional Division.

Appellant then asked his mother, Vivian Brown, and his cousin, Kim Martinez, who both live in New York, to request the documents from HPD. Both did so, and were denied by both the Houston Police Department and the Attorney General's Office of Texas, pursuant to § 552.028(b). See e.g. ROA.507-509, 527. Appellee Paxton deemed both as "agents" working for Appellant, and denied the requests. See e.g. ROA.529.

After being released from prison in 2000, Appellant would make several more attempts to get the documents, and again would be denied by HPD and Appellee Ken Paxton's Office, but this time pursuant to section 552.108(a)(2). Under this particular statute, Appellant was denied the documents because Thomas Ervin, a person who was arrested at the time Appellant was arrested, but who was not directly involved in the drug transaction that resulted in Appellant's arrest, had his charges dropped. See e.g. ROA.514,523,525, 536, 538. In other words, Appellant was denied the documents he needed to fight his criminal conviction, because a person in an unrelated case was arrested and the charges against that individual were ultimately dropped. *Id.*

In 2013, Appellant would learn that Mr. Thomas Ervin had passed in 2012. See ROA.540. So, in that same year and in 2019, Appellant would make additional requests for the documents, and would even seek reconsideration from both HPD

and Appellee Ken Paxton's office, informing both entities of Mr. Thomas' passing. ROA.523, 525. These requests were also denied.

In 2018, the Supreme Court decided *McCoy v. Louisiana*, 584 U.S. 414, and this case provided Appellant with a new legal basis[3], upon which he could fight his case in the state courts. In 2021 Appellant filed a subsequent writ in the 339 judicial district court in Harris County, Texas challenging his conviction. The habeas court would eventually appoint counsel[4] in the case, and counsel, in 2022, would obtain a copy of the incident report appellant was trying to obtain for 28 years. By the time counsel received the documents, the brief for Brown's writ had been already submitted and Brown was in the 32nd year of his 35-year sentence.

**The Evidence of Fabrication from the HPD Reports**

The incident report would impeach the testimony of Appellee Winkler. At Appellant's second trial, Appellee Winkler testified that on November 8, 1990 he put together an undercover team to purchase drugs being sold at the J. Thomas Lounge, located in downtown Houston[5].ROA.315-317. To prepare for the buy, and for safety, Winkler testified that DeBlanc was wearing a body mic that day, and that he was monitoring said device. He testified that the undercover officer that day, Donald DeBlanc, was approached by Appellant in the front of the J. Thomas lounge,

---

[3] The Court held it unconstitutional for an attorney to concede his client's guilt, against the clients' desire not to have his guilt conceded.
[4] The Court appointed Bob
[5] The team consisted of DeBlanc, Winkler, and Officer Gonzelez, Lopez and Goode.

and after informing appellant he wanted to purchase crack cocaine, that appellant took DeBlanc into the lounge to purchase $20 worth. ROA.315-17.

Winkler also testified that after Appellant and DeBlanc exited the lounge, that he witnessed a transaction between Appellant and DeBlanc, where DeBlanc handed Appellant $5 for paraphernalia and for assisting in the transaction. ROA.329. Winkler also testified that he maintained visual surveillance of appellant, and after DeBlanc provided the description of those who needed to be arrested in the lounge from around the corner of the lounge, that he conveyed said descriptions to the raid team standing by, and after one member of the team arrested Appellant, that he then went around the corner and picked up DeBlanc.ROA.331. Winkler further testified that he was able to hear the conversations both in the Lounge and outside.ROA.325-331. Winkler further testified that he wrote the incident report in the case.ROA.325-331.

The incident and the offense reports impeach Winkler's trial testimony. ROA.542,545. First, both reports show that when Appellant was arrested, he had no money on his person.ROA.542, 545-551. Neither marked nor unmarked money.

Next, the incident report does not list the name or badge number of the arresting officer in the case. ROA.545. In the incident report, in the area where the badge number would be, is all zeros. ROA.548. And no name is provided for the arresting officer.ROA.548-550. The incident report does, however, describe in detail

information regarding who arrested the three individuals arrested in the lounge[6].ROA.548-550. The report lays out the name and badge number of the officer who arrested Barbara Williams, a female who was arrested coming out of a restroom, ROA.548-550, and for those who arrested Russell Thomas and Thomas Ervin, standing just in the doorway of the lounge.ROA.550.

Unlike the incident report, the offense report does provide a name of the arresting officer that day on November 8, 1990. ROA.542-543. And the name it lists as being the arresting officer is Winkler.ROA.542-543.

Lastly, the incident report did not mention anything regarding the use of a body mic, or that there was any oral surveillance equipment used or monitored that day.ROA.545-552. There was no mention of any tape produced, or mention of acquiring said equipment or requisitioning any. ROA.545-552.

**Procedural Facts in the District Court**

In July of 2024, Appellant brought suit against Appellees City of Houston and Ken Paxton, for Brady violations for their refusal to provide the documents that Appellant and his family requested from HPD for over 28 years. Brown also challenged the constitutionality of sections 552.028 and 552.108. ROA.12.

On November 25, 2024 Appellant moved for leave of court to amend the complaint. ROA1290. In the motion, appellant explained that the primary reason he

[6] Russell Thomas, Barbara Williams and Thomas Ervin were arrested in the lounge.

moved to amend was to seek prospective relief—declaratory and injunctive relief against Appellee Paxton—thereby presenting a claim that fell under the Ex parte Young doctrine[7], and was in direct contravention to the Appellee's defense of sovereign immunity. ROA1290.

In the Prayer for Relief section of the Third Amended Complaint, Appellant requested the following relief:

> 1. Declaratory judgment that §552.028(a) of the Texas Gov't Code is unconstitutional, violating due process and equal protection of the law, in that it allows state actors, and or the Attorney General, to suppress or obstruct access for incarcerated individuals or their family.
>
> 2. Declaratory judgment that §552.028(b) of the Texas Gov't Code is unconstitutional, violating due process and equal protection of the law, in that by subjecting a convicted person to having to hire an attorney to obtain documents, creates a suppression of exculpatory evidence due to a financial impediment, as well as denying the individual the constitutional right to self-representation.
>
> 3. Declaratory judgment that §552.108 is unconstitutional because the disclosure of evidence to a convicted person, should not be denied simply because the charges were dropped pertaining to the arrest and release of another person.
>
> 4. Permanent Injunction enjoining the defendants from utilizing section 552.028 (a) and (b) against incarcerated individuals, and or to render said statute as void.
>
> 5. Permanent Injunction enjoining the defendants from utilizing section 552.108 (a) against a convicted felon, whether he be released or not from prison, and to render said statute as void.

*See* ROA.1351.

[7] 209 U.S. 123 (1908).

On February 19, 2025 the district court denied Brown leave. ROA.1671. The Court gave no indication why it denied leave. The district court failed to enter findings of facts or conclusions of law. ROA.1671.

**Standard of Review**

A district court's denial of a motion to amend the pleadings is reviewed for abuse of discretion." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017); *Carmouche v. Hooper*, 77 F.4th 362, 367 (5th Cir. 2023).

## Argument and Authorities

### A. The Trial Court failed to Enter its grounds for denying amendment

First, the district court abused its discretion because it completely failed to state why it denied the amendment. ROA.1671. Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. It provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This and other federal rules "reject the approach that pleading is a game of skill in which one misstep … may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v Gibson*, 355 U.S. 41, 48 (1957). Rule 15(a) and (d) evince a liberal policy and a motion to amend should not be denied **absent a substantial reason to do so**. See *Jacobsen v Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

This court itself has stated numerous times that it has "a strong preference for explicit reasons in denying leave to amend, and have expressly stated that motions to amend should be freely granted and that a district court's failure to explain its reasons for denying the motion typically warrants reversal." *Hernandez v. West Texas Treasures Estate Sales, L.L.C.*, 79 F.4th 464, 468 (2023); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018). Before dismissing a complaint, a pro se plaintiff should be given an opportunity to amend his complaint to remedy any deficiencies. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). In other words, leave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances. See *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009).

The proposed amendment in this case was based on critical, newly obtained facts showing that for nearly three decades, Appellant was denied access to exculpatory and impeachment evidence, including HPD incident and offense reports (ROA.542–543; ROA.545–552) and eyewitness testimony from Barbara Williams (ROA.175, 181–182, 184–187) and Russell Thomas (ROA.157–168). This evidence directly contradicted Officer Winkler's trial testimony at the second trial (ROA.315–331) and would have materially strengthened Appellant's Brady claims. The district court's denial of amendment without explanation prevented Appellant from incorporating these provable facts.

### B. The Amendment Cured a Jurisdictional Defect Under Ex parte Young

Appellant's proposed amendment sought declaratory judgments that Tex. Gov't Code §§ 552.028(a), 552.028(b), and 552.108 are unconstitutional, and injunctive relief prohibiting their continued application to withhold exculpatory evidence. ROA.1351. These clarifications brought the claims within the well-established Ex parte Young exception, which permits prospective relief against state officials notwithstanding sovereign immunity.

Denying leave prevented Appellant from properly framing claims that were otherwise viable. Where amendment cures jurisdictional defects, denial constitutes an abuse of discretion. See, e.g., *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).

### C. The Interests of Justice Favored Amendment

Next, Appellant points out that the amendment was clearly in the interest of justice. As described in detail above, appellant is challenging the two state statutes, and the attorney general of Texas in his official capacity for the suppression and or obstruction of exculpatory evidence in violation of federal law established by the Supreme Court in *Brady v. Maryland,* 373 U.S. 83 *(1963).* For nearly three decades, Appellant was denied access to exculpatory documents necessary to challenge his conviction. The record demonstrates that Texas statutes were applied in a manner that obstructed access to Brady material, raising Supremacy Clause concerns. See

*PLIVA, Inc. v. Mensing,* 564 U.S. 604, 617 (2011) (federal law preempts conflicting state law); *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 728 (5th Cir. 2009).

Allowing amendment would have ensured the claims were resolved on their merits, consistent with Rule 15's liberal standard and this Court's precedent favoring opportunities to cure deficiencies. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009).

The Supremacy Clause of the U.S. Constitution dictates that federal law is supreme when it conflicts with state law. See e.g. *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724 (5th Cir. 2009). Identifying preemption ensures that federal law is correctly applied and enforced, and that state laws don't improperly interfere with national objectives. *Id*. It is clearly a national objective the that the criminally accused not be subjected to the suppression and or obstruction of exculpatory and mitigating material pursuant to the Supreme Court's decision in *Brady*. Therefore, the district court clearly abused its discretion in this case.

**IV. The trial court abused its discretion when it granted Appellees City of Houston and Floyd Winkler a stay of discovery because (a) they never requested a stay, (b) the appellees defaulted and should not have been entitled to a stay, and (c) they are not arms of the state and were not entitled to a stay based on sovereign immunity under the 11th Amendment**

**FACTS IN SUPPORT**

After serving some of the Appellees with discovery requests, Appellee Ken Paxton on January 27, 2025, filed his Opposed Motion to Stay Discovery. ROA.1508. In it, Appellee Paxton argued that he should be entitled to a stay because the Court lacked subject matter jurisdiction due to his entitlement to sovereign immunity under the 11th Amendment. ROA.1509. Based on this, Paxton requested that the Court stay discovery until his immunity defense was resolved. *Id*.

In addition, Appellee Paxton would also seek to stay discovery for all the other defendants in the case arguing,

> "Although the other Defendants in this case **have not** specifically raised immunity defenses to Plaintiff's claims against them, that is not a reasonable basis for permitting discovery to proceed piecemeal in this case, before the immunity defenses raised by Defendant Paxton are resolved.
> …
>
> For all the foregoing reasons, Defendant requests this Court to stay all discovery in this matter and vacate its Order setting an initial pretrial conference and requirement for parties to file a joint case management plat…"

See ROA Pp. 1511 – 1512.

On February 3, 2025, Appellant Brown filed his Opposition to Appellee Ken Paxton's Motion to Stay and Vacate Order for Initial Conference. ROA.1563. On February 19, 2025, the district court would grant Appellee Paxton's Motion to Stay Discovery pending resolution of the several defendants' motions to dismiss. ROA.1674.

**Standard of Review**

This Court reviews a decision to stay discovery pending resolution of a dispositive motion for an abuse of discretion. *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.* 421 F.3d 314 (5th Cir. 2005); *Corwin v. Marney, Orton Inv.,* 843 F.2d 194, 200 (1988).

## Argument and Authorities

A request to stay discovery must be considered a motion for protective order under Fed. R. Civ. P. 26(c)(1). *Landry v. Air Line Pilots Assoc. Int'l AFL-CIO,* 901 F.2d 404, 435 (5th Cir. 1990). And so, courts should exercise discretion to stay discovery only for good cause, to protect from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1).

### A. Appellees City of Houston and Winkler did not move to stay discovery.

It's clear that the "trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). The trial court also has "inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir. 1987).

However, Rule 26(c) allows the court to only issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

In the instant case, the trial court's blanket stay, absent motions from the City and Winkler, constitutes an abuse of discretion because there is no way it can be said that "good cause" was shown when the Appellees themselves did not file a motion to stay discovery. There is no way that the City or Officer Winkler met the burden required by Rule 26(c), when they themselves did not make a "particular and specific demonstration of fact," as to why a protective order was needed.

As shown *supra,* both Houston and Winkler defaulted. And as will be shown *infra*, they are not arms of the state. Therefore, Appellee Paxton cannot lift the burden that is required by Rule, nor can he substitute his grounds or reasoning or position, for that of the city's or for Appellee Winkler's.

**B. Appellees City and Winkler defaulted and were not entitled to a stay pursuant to Rule 8(b).**

The trial court erred by allowing the City to benefit from the Paxton's stay of discovery, despite Houston's default and failure to respond to the operative amended complaint. Houston, properly served with the amended complaint, failed to answer. Instead, improperly responding to the superseded complaint in which it was not a

party, violating Rule 8(b)'s requirement to address the operative pleading. And the same for Winkler.

Under rule 55, this non response constitutes default and courts, as in *Lindsey v. Prive Corp.,* 161 F.3d 886, 892 (5th Cir. 1998), hold that defaulting defendants forfeit procedural protections, like discovery stays. And as will be discussed *infra*, Houston, as a municipality, and Winkler, as an individual, are not arms of the state, and thus not entitled to the state's sovereign immunity under the 11th Amendment, *See e.g. Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978). By overlooking both Houston's and Winkler's default, and improperly extending the state's stay, the trial court abused its discretion, warranting reversal.

**C. Appellees City of Houston and Winkler are not arms of the state and should therefore not be entitled to a stay based on sovereign immunity.**

Sovereign immunity protects the state, and consequently "arms of the state," from liability for federal claims in federal court. *Alden v. Maine,* 527 U.S. 706, 756 (1999). However, lesser entities such as counties and municipalities "are determined not to be arms of the state." See *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston*, Tex., 260 F. Supp. 3d 738, 760 (S.D. Tex. 2017). Consequently, courts have held that cities, such as the City, are not entitled to the Eleventh Amendment's sovereign immunity. See, e.g., *Tr. v. Avigilon Corp*., No. 2:10- CV-605, 2012 WL 12828858, at *5 (E.D. Tex. Mar. 9, 2012).

Based on this, the trial court abused its discretion by granting City of Houston and Officer Winkler, a stay of discovery based on Paxton's sovereign immunity motion. Sovereign immunity protects only states and their arms, not municipalities. *Alden v. Maine*, 527 U.S. 706, 756 (1999). Houston, as a municipality, is not an arm of the state and is liable only under section 1983. *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston*, Tex., 260 F. Supp. 3d 738, 760 (S.D. Tex. 2017). The court's error prejudiced the Appellant, by delaying discovery critical to Section 1983 and 1985 claims, constituting reversible error under *Wiwa v Royal Dutch Petroleum Co*, 392 F.3d 812 (5th Cir. 2004). Finally, Paxton's attempt to extend his immunity to Houston and Winkler via blanket stay lacks legal basis, as neither filed their own motion nor showed good cause under rule 26(c). This improper stay is further unwarranted, given Houston and Winkler's default on the operative complaint, *supra.*

### V. The District Court Deprived Appellant—a Pro Se Litigant—of a Meaningful Opportunity to Be Heard at the Motion Hearing, Allowing Erroneous Conduct to Bleed into Its Dismissal Order Without Real Evaluation

On March 20, 2025, the district court held a hearing on the Appellees' Rule 12(b)(6) motions to dismiss. ROA.2293. While addressing the Court regarding his claims, Appellant attempted to introduce documentary evidence establishing that Officer Winkler falsified documents and fabricated evidence. In response, the trial court would reject said documents in the following exchange:

| | |
|---|---|
| The Court: | Who arrested you in this? |
| Mr. Brown: | That is what we do not know. There's a – as a matter of fact, Your Honor, may I hand you some documents? |
| The Court: | I'm sorry. |
| Mr. Brown: | I have some documents here some exhibits that I filed with the court. |
| The Court: | No, I don't want your exhibits. I want you to tell me – |
| Mr. Brown: | Okay. Giving you two versions – |
| The Court: | No, no, here's what I'm saying somebody arrested you, right? |
| Mr. Brown: | Right. |
| The Court: | It was not DeBlanc. |
| Mr. Brown: | Right. |
| The Court: | And it was not Winkler? |
| Mr. Brown: | That is correct. |
| The Court: | Who was it? You don't know? |
| Mr. Brown: | No, Your Honor. And here I have copies of the official offense report that it's omitted. |
| The Court: | Okay. |
| Mr. Brown: | And then I have another police officer report where officer Winkler, who wrote the report, put himself as the arresting officer. And I also have testimony here from Winkler at the trial, who said he witnessed the arrest. In one document, he said that he did not witness it; in his testimony, he claimed he witnessed it, and in another report, he's the arresting officer. |

ROA.2304, 2305.

Next, the trial court—throughout the proceedings—would continuously steer the focus of the proceedings to question Appellant's motives for filing suit since he was not found innocent, questioning:

| | |
|---|---|
| The court: | -- How did you get a reversal of the conviction in 2022? |

| | |
|---|---|
| Mr. Brown: | By filing a writ of habeas Corpus in the 339th Judicial District Court. |
| … | (ROA.2309). |
| The Court: | I want to know what happened. You were not – apparently, they – did the court set the conviction aside? |
| Mr. Brown: | Yes, sir. |
| The Court: | And what was the basis for setting aside the conviction? |
| Mr. Brown: | The basis for – the Court found was ineffective assistance of counsel based on – |
| The Court: | All right. The court didn't say there was no evidence for the conviction. |
| Mr. Brown: | No, it didn't get to it because of counsel's ineffectiveness. |
| … | (ROA.2310). |
| The Court: | Okay. So, has anyone to this day said that you were wrongfully convicted or that you are an innocent person, any court? |
| Mr. Brown: | No, sir. |
| The Court: | Okay. So, what is your lawsuit in Federal Court about? |
| Mr. Brown: | Well, your honor, even though I wasn't exonerated, even though my record was expunged, counsel in my case completely tore down my defense. He actually prosecuted me. Besides some of the other evidence. |
| … | (ROA.2310-2311). |
| Mr. Brown: | Fred Reynolds conceded my guilt, even though I had a mistrial; I had evidence pointing to my innocence. So I get what you're saying with respect to was I found innocent. I would say that counsel—the Court of Appeals found that counsel committed a structural error, meaning the whole fundamental proceeding was unfair. So he was not putting forth my innocence evidence. |
| … | (ROA.2311). |
| The Court: | Okay. So Fred Reynolds was a focus of the Court's determination that you had incompetent or inadequate counsel, correct? |

Mr. Brown: That is Correct, Your Honor.

The Court: Okay. And that's what the basis of the court's judgment was, right?

Mr. Brown: Correct, ineffective assistance.

The Court: I'm back to my question. Why are you in Federal Court since you don't have a finding of innocence?

Mr. Brown: Because, Your Honor, the tactics that were employed by the defendants that I am suing prevented me from actually establishing that…

ROA.2312.

The issue regarding innocence would then morph into the issue of whether Appellant's conviction had been expunged. Ms. Jones, representing Harris County, would briefly address the issue, followed by attorney Joy Thomas, representing the City and Winkler, who, unsolicited, mislead the court into believing that Appellant's case had not been expunged. The following transpired:

Ms. Jones: Yes, your Honor. And if I may point out, he did state his record had been expunged; therefore, we don't have access to verify really many of these statements or contentions.

The Court: How does a record get expunged? I know he can request it. But is there some basis that you are aware for the expunction of those records?

Ms. Jones: I don't know off the top of my head, your honor, but he does have to apply for it or go before a Court and there has to be an order in place. And all of the documents in regard to that case that's been expunged have to be destroyed. So, therefore, any documents regarding his case, the District Attorney would no longer have, the police officers wouldn't either, yeah.

The Court: Okay. Thank you very much.

Ms. Jones: Okay. Thank you, your honor.

The Court: Let's see, Ms. –

Mr. Brown: Your Honor –

The Court: I'm sorry, I'm not taking responses. I'm taking their statements right now. Ms. Thomas. And you're representing – and tell us who – again, who you're representing. You're going to stay there?

… (ROA.2322-2323).

Ms. Thomas: Joy Thomas, I'm representing the City of Houston and Officer Winkler.

The Court: Okay.

Ms. Thomas: Before I begin, if the Court would deem it appropriate, I do have an answer to your expunction question.

The Court: Okay.

Ms. Thomas: In order for you to be eligible for an expunction versus a petition for nondisclosure in the State of Texas, you would need to have been exonerated, found not guilty through – found not guilty by a jury, or your case had to be dismissed, and not dismissed by deferred adjudication probation outright dismissed. And he would have to apply for an expunction – an expunction petition; however, if he does not meet those three prongs, he's not eligible for an expunction, if he was not exonerated, if his case was not outright dismissed, or if he was not found guilty by a jury.

The Court: I think those are the rule, right?

Ms. Thomas: Correct.

The Court: So that's why I raised the question how would his records be expunged.

Ms. Thomas: They would not.

The Court: They have not been as far as –

Ms. Thomas: They have not. And he would not be eligible. Now in respect to any Court that would hear that petition, that would be their decision, but according to the law he's not eligible.

The Court: Okay. So, the Court makes the decision, whatever that decision may be, but the procedure is what you're telling me. And based on that procedure, there would be no basis for those records to be expunged at this time.

Ms. Thomas: Correct.

The Court: All right. Go ahead and respond to the lawsuit then.

ROA.2323-2324.

Following her explanation regarding the expunction issue, Ms. Thomas would then begin arguing that Appellant's false arrest claims were time-barred, which would somehow morph into all of appellant's claims being time-barred in the following exchange:

Ms. Thomas: So, with regard to Officer Winkler, besides immunity for – in his official capacity, the false arrest claim is also time-barred. The plaintiff's allegation –

The Court: Time-barred, meaning he did not bring the lawsuit –

Ms. Thomas: Correct.

The Court: -- within the statute of limitations?

Ms. Thomas: Correct.

… (ROA.2327).

The Court: So what you're saying is that this officer, and any involvement that anyone might claim the city had in this, all of this occurred back in the 1990s, and the statute of limitations cuts off any claim for monetary damages or any other damages.

Ms. Thomas: Exactly.

The Court: Okay. Anything else?

Ms. Thomas: And the – in the light most favorable to the plaintiff, in his pleadings, he does not plausibly allege a clearly established Fourth Amendment violation by Officer Winkler.

The Court: Okay.

Ms. Thomas: So if the Court –

The Court: Even if he did, would that not be a – would that also fall within the statute of limitations?

Ms. Thomas: It would.

ROA.2328-2329.

One week later, on March 27, 2025, the district court entered its Memorandum Opinion and Order ("Order") granting all Appellees' motions to dismiss under Rule 12(b)(6). ROA.1743. The court did not however, base its decision upon any of the grounds presented in the Appellees' motions. See ROA.897, 953, 1379, and 1621. Instead, the district court, sua sponte, entered the following **Analysis and Discussion** as the basis for dismissing Appellant's claims, which appear to have been heavily influenced by the dismissal hearing:

> Tracy Brown, while his underlying conviction was dismissed due to ineffective assistance of counsel, was neither exonerated nor found innocent of the charges. Specifically, the trial court and jury found that probable cause existed for the arrest and conviction. *Ex parte Brown*, No. WR-25,632-03, (Tex. Crim. App. June 15, 2022). As a result, he lacks standing to pursue his current claim against any of the defendants.
>
> Moreover, even assuming arguendo that standing existed, Brown's claims are time-barred, as more than two years have elapsed since the accrual of his cause of action. *Gonzales v. Wyatt*, 57 F.3d 1016, 1020 (5th Cir. 1998).

ROA.1745. In the Conclusion section of the Order, the court would go on to further define the parameters of its decision, opining:

> "Based on the foregoing **analysis and discussion**, the defendants' motion to dismiss is GRANTED."

ROA.1745.

On April 23, 2025 Appellant moved for reconsideration of the Court's Order. ROA.1754. On May 12, 2025, the district court would deny Appellant's motion for reconsideration (ROA.2287), and on June 9, 2025, Appellant timely filed his Notice of Appeal. ROA.2288.

**Standard of Review**

This Court reviews alleged due process violations de novo. See e.g., *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 642-43 (5th Cir. 2007)

## Argument and Authorities

The district court's handling of the March 20, 2025, hearing (ROA.2293-2329) violated Appellant's due process rights by systematically limiting his participation as a pro se litigant, while permitting defense counsel to introduce unchallenged misdirections. This not only frustrated Appellant's ability to defend his claims but directly influenced—or "bled into"—the court's March 27, 2025, dismissal order (ROA.1743, 1745), which dismissed the suit sua sponte on unraised grounds without any substantive evaluation of the pleadings or merits. Pro se litigants are entitled to liberal construction and accommodations to ensure fairness (*Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996) (affording "wide latitude")), yet the court here imposed barriers that *Mathews* v. Eldridge requires balancing against (424 U.S. 319, 335 (1976) (due process demands opportunity to be heard)).

**A. Refusal to Allow Evidence Presentation**:

When Appellant attempted to introduce documentary exhibits establishing Officer Winkler's falsification and fabrication (e.g., inconsistent offense reports and trial testimony, ROA.2304-05)—facts central to his claims—the court repeatedly interrupted and rejected them outright: "No, I don't want your exhibits. I want you to tell me—" (ROA.2304). At the Rule 12(b)(6) stage, such exhibits, if referenced in the complaint, must be considered as part of the pleadings (Fed. R. Civ. P. 10(c); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Specifically, the exhibits included the November 8, 1990, incident and offense reports (ROA.542, 545-552), which directly impeached Winkler's trial testimony (ROA.315-331) that he personally monitored a body mic for safety, visually witnessed the drug transaction and $5 handoff outside the J. Thomas Lounge, authored the reports as the arresting officer, and overheard all conversations. In reality: (i) no money (marked or otherwise) was found on Appellant at arrest (ROA.542, 545-551), contradicting the alleged $20 buy and $5 exchange; (ii) the incident report lists zeros for the arresting officer's badge number with no name for Appellant's arrest (ROA.548), while detailing names and badge numbers for co-defendants' arrests (e.g., Barbara Williams from the restroom, Russell Thomas and Thomas Ervin from the doorway; ROA.548-550)—yet the offense report retroactively names Winkler as the arrester (ROA.542-543); and (iii) no mention of

a body mic, audio surveillance, tapes, or equipment requisition exists (ROA.545-552), belying his claims of real-time monitoring.

Had the court reviewed these, it would have seen a plausible fabrication claim under *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014)) (due process violation for manufactured evidence), defeating summary dismissal of the tampering allegations. Instead, this suppression prevented any real evaluation, allowing them to be dismissed as unsubstantiated.

**B. Limits on Counterarguments and Rebuttals**:

Throughout, the court curtailed Appellant's responses, including silencing him during Ms. Thomas's arguments ("I'm sorry, I'm not taking responses," ROA.2323) and denying post-argument rebuttal: When Appellant sought to counter ("Your Honor, may I?"), the court responded, "No. Sir, just hold a minute," followed by a dismissive "This is your case, you don't have to remember it." ROA.2332. This not only frustrated Appellant's need to "remember all of this... to challenge" (id.) but deprived him of addressing factual disputes, contravening the right to a meaningful hearing (*Howard v. King,* 707 F.2d 215, 220 (5th Cir. 1983) (reversing for failure to allow pro se rebuttal)).

**C. Permitting Misdirection on Expunction**:

Unsolicited, Ms. Thomas misled the court on Texas expunction law (Tex. Code Crim. Proc. Art. 55.01), claiming Appellant was ineligible without

"exoneration, acquittal, or outright dismissal" (ROA.2323-24), ignoring the statute's allowance for post-reversal/dismissal expunction. The court adopted this: "there would be no basis for those records to be expunged" (ROA.2324), without permitting Appellant's response—despite his actual November 2022 expunction order[8], which confirmed favorable termination post-July 29, 2022, dismissal (ROA.602).

This Court should also note that the City, through the Houston Police Department, participated directly in the expunction process. [9]. The expunction order itself bears the signature of the "Attorneys for the City of Houston Police Department," confirming the City's involvement. Accordingly, Ms. Thomas—who represented HPD before the amendment substituting the City as a defendant—either knew, or at minimum should have known, of the expunction. Yet she argued the opposite to the district court. By adopting that misstatement, the court allowed counsel's argument, rather than the governing statute and record evidence, to shape its ruling.

**D. Permitting Misdirection on Statute of Limitations**:

Ms. Thomas' intentions was to argue that the false arrest claim was time-barred (ROA.2327). The district court, however, expanded this sua sponte to "all of

[8] See Ex parte Brown, Cause No. 2022-57289, 11th Civil District Court of Harris County, Texas.
[9] Clifton Journet, III, attorney, represented HPD

this" (ROA.2328–29), with Ms. Thomas acquiescing without clarification. Appellant was denied any chance to respond to this expansion, which overlooked *Heck v. Humphrey*'s deferred-accrual rule, 512 U.S. 477 (1994). Moreover, Appellant himself sought to withdraw his Fourth Amendment false imprisonment claims. In his motion for leave to file a Third Amended Complaint, he made explicit that:

> "Through the Amended Complaint, Plaintiff seeks to modify his Count 1, the false imprisonment claim against Winkler and the City of Houston, to one for pretrial detention." *See Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 563 (2024);

ROA.1290. Although the district court denied leave, this record is critical. Ms. Thomas pressed only for dismissal of the false imprisonment claims as to Winkler, and Appellant agreed to withdraw them. Instead of limiting its ruling accordingly, the court—relying on counsel's broader characterization—treated *all* of Appellant's claims as time-barred. This sequence underscores the same procedural asymmetry that pervaded the case: defense counsel's misstatements were allowed to expand the grounds for dismissal, while Appellant was cut off from clarifying his pleadings and the governing law. The result was not a neutral application of limitations but a dismissal that rested on misdirection rather than the operative record or controlling precedent.

### E. The Cumulative Effect of Ms. Thomas' Misleading the Court

This erroneous conduct did not end at the hearing—it bled directly into the dismissal order, where the court echoed the unchallenged doubts: citing a lack of "exoneration" or "innocence" for standing (ROA.1745, mirroring the innocence probing and expunction misdirection) and assuming a pre-2022 accrual for time-bar (id., extending the limitations expansion without rebuttal)—all while ignoring the suppressed evidence of fabrication that undermined any "probable cause" finding. Critically, the order bypassed any "real evaluation" of Appellant's claims—ignoring defendants' actual arguments (ROA.897, 953, 1379, 1621) and the pleadings' sufficiency—in favor of these tainted, sua sponte grounds. Prejudice is evident: But for these limitations, Appellant could have presented his evidence and timeline, forcing a merits-based review. The cumulative effect evidences a denial of due process.

## VI. The district court erred when it granted the Appellees' motions to dismiss, because:

**(a) the court entered a *sua sponte* dismissal of Plaintiff's § 1983 claims with prejudice without first providing plaintiff notice of its intentions, and an opportunity to respond,**

**(b) the court subjected Appellant to a 'favorable determination requirement' that was specifically overruled by the US Supreme Court in *Thompson v. Clark*,**

**(c) the court raised, sua sponte, the affirmative defense of statute of limitations in an ordinary civil case**

**where Appellant is not a prisoner, nor proceeding in forma pauperis, and**

**(d) the court miscalculated the accrual date on Plaintiff's § 1983 claims, by starting the accrual date on the date the case was reversed, as opposed to the date the case was officially dismissed, in direct contravention to the US Supreme Court's decisions in *Heck v. Humphrey*, *McDonough v. Smith*, and even *Thompson v. Clark***

**Facts in Support of Argument VI**

Appellant incorporates by reference the Facts in Support listed above, that support his Fifth (V) argument.

**Standard of Review**

This Court evaluates de novo the district court's grant of Appellees' Rules 12(b)(6) motions for dismissal applying the same standard used by the district court. *Hebert v. United States*, 53 F.3d 720, 722 (5th Cir.1995).

Procedural errors like lack of notice based on sua sponte dismissal are evaluated as an abuse of discretion under *Wiwa v Royal Dutch Petroleum Co*, 392 F.3d 812 (5th Cir. 2004).

## ARGUMENT AND AUTHORITIES

### A. The Court erred by entering a *sua sponte* dismissal of Plaintiff's § 1983 claims with prejudice without first providing plaintiff notice of its intentions, and an opportunity to respond.

First, it's clear that the Memorandum Opinion and Order of the district court was not based upon the arguments raised by the Appellees. See *Motions to Dismiss*,

ROA.897, 953, 1379, and 1621. None of the Appellees argued that Brown did not have standing, nor did any argue that Brown did not timely file suit. Therefore, Appellant's claims were dismissed sua sponte, and it was done without notice of the Court's intentions or an opportunity to respond.

In *Lozano v. Ocwen Federal Bank, FSB,* 489 F.3d 636 (5th Cir.2007), this Court explained that a district court may dismiss a claim on its own motion "'as long as the procedure employed is fair.'" *Id.* at 642 (quoting *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir.1998)); *see also* 5A Wright & Miller, Federal Practice & Procedure § 1357, at 409 (3d ed.2004). "Our prior case law has 'suggested that fairness in this context requires both notice of the court's intention and an opportunity to respond.'" *Lozano,* 489 F.3d at 643 (quoting *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1177 (5th Cir.2006)). "This is consistent with the view of three other circuits that district courts should not dismiss claims *sua sponte* without prior notice and opportunity to respond." *Carroll,* 470 F.3d at 1177.

The trial court in effect denied Appellant due process and abused its discretion by entering a sua sponte dismissal without providing notice and allowing appellant to rebut its findings that Appellant lacked standing to bring suit and did not timely file suit. This completely prejudiced Appellant's ability to adequately fight his case, and therefore, requires reversal.

**B. The Court erroneously applied a favorable-determination requirement that had been overruled by the Supreme Court in *Thompson v. Clark,* 596 U.S. 36, 142 S.Ct. 1332 (2022).**

Next, the district court's findings that Appellant was "neither exonerated nor found innocent of the charges," led to the district court's erroneous belief that appellant had no standing to sue. ROA.1745. This erroneous requirement imposed by the district court amounted to a "favorable termination" requirement which was specifically overruled by the Supreme Court in *Thompson v. Clark,* 596 U.S. 36, 142 S.Ct. 1332 (2022). In *Thompson,* the Court held that to demonstrate the favorable termination of a criminal prosecution for purposes of a Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction, and is not required to demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient.

The Court further reasoned that "the question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed. And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prosecutor or court happened to explain why the charges were dismissed. In addition, requiring the plaintiff to show that his prosecution ended with an

affirmative indication of innocence would paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial. That would make little sense. Finally, requiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits—among other things, officers are still protected by the requirement that the plaintiff show the absence of probable cause and by qualified immunity." 596 U.S. at 44, 142 S. Ct. at 1340.

**C. The Court erroneously raised, sua sponte, the affirmative defense of statute of limitations in an ordinary civil case where Appellant is not a prisoner, nor proceeding in forma pauperis.**

Next, the Court erred because it cannot raise the statute of limitations as the grounds for dismissal sua sponte, because it is a "waivable affirmative defense" under Rule 8(c), Federal Rules of Civil Procedure, and Plaintiff is not proceeding in this case in forma pauperis or pursuant to 28 U.S.C. § 1915A.

In *Ogbebor v. Hardy,* No. 24-30403 (March 2025), this Court held that "the district court has a general power to dismiss cases sua sponte." *Carver v. Atwood,* 18 F.4th 494, 496 (5th Cir. 2021). For example, "a district court may dismiss a complaint on its own for failure to state a claim." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). While a district court is "authorized to consider the sufficiency of the complaint on its own initiative," *Lozano v. Ocwen*

*Fed. Bank, FSB,* 489 F.3d 636, 642 (5th Cir. 2007) (quotation omitted), we have previously cautioned against courts raising waivable affirmative defenses sua sponte. *Warnock v. Pecos County*, 116 F.3d 776, 778 (5th Cir. 1997) (noting that an affirmative defense under Rule 8(c) "generally should not [be] raise[d] sua sponte"). The statute of limitations is an affirmative defense that is usually waived if not timely pleaded by a defendant. Fed. R. Civ. P. 8(c); *Davis v. Huskipower Outdoor Equip. Corp.,* 936 F.2d 193, 198 (5th Cir. 1991). District courts may sua sponte raise a non-jurisdictional limitations defense "only in a limited number of particular circumstances." *Lebouef v. Island Operating Co., Inc.,* 342 F. App'x 983, 984 (5th Cir. 2009). Those circumstances include habeas corpus proceedings, prisoner actions under 28 U.S.C. § 1915A, and in forma pauperis suits under 28 U.S.C. § 1915. Id. & n.1; see *Kiser v. Johnson*, 163 F.3d 326, 328–29 (5th Cir. 1999).

In an ordinary civil case, like this where the district court has no special duty to examine the pleadings, the affirmative defense of statute of limitations can be waived and may not be raised by the court sua sponte. Id. (citing *Eriline Co. v. Johnson,* 440 F.3d 648, 657 (4th Cir. 2006)). In the instant case, Appellant Brown was not a prisoner at the time he filed suit, nor is he proceeding in forma pauperis. This is an ordinary civil case where Appellant Brown paid the filing fees in the

district court (ROA.3), as well as for the appeal. The district court therefore, erred in its sua sponte dismissing of Plaintiff's claims as time-barred. *Id,*.

**D. The Court miscalculated the start of the accrual date with respect to Plaintiff's § 1983 claims of Malicious Prosecution, Fabrication of Evidence, Brady and Monell claims.**

Although the district Court provided no date upon which it's made its calculation to determine whether Appellant's claims were time-barred, it would appear from the district court's order that the Court may have used June 15, 2022, the date that Brown's writ of habeas corpus was granted (ROA.598), as the accrual date, instead of the date that the case was officially dismissed by the trial court, which was July 29, 2022. ROA.602. Brown filed suit on July 17, 2024, which is well within the statute of limitations from the date the case was dismissed.

In the Order granting Brown relief on his writ of habeas corpus, the Court of Criminal Appeals held,

> "Relief is granted. The judgment in cause number 580614 in the 339th District Court of Harris County is set aside, and **Applicant is remanded to the custody of the Sheriff of Harris County to answer the charges as set out in the indictment. The trial court shall issue any necessary bench warrant within ten days from the date of this Court's mandate**."

See ROA.598. By remanding "back to the custody of Harris County," Appellant was to be put back in jail to face the charges against him; to face the criminal charges all over again. At that juncture, the conviction may have been overturned, but the "criminal proceedings" did not **end** in Appellant's favor. The "dismissal," on the other hand, ended all criminal proceedings against Plaintiff. ROA.602.

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court announced an accrual rule for section 1983 actions involving an underlying criminal conviction. *Id.* at 478-79, 114 S.Ct. 2364. The Court explained that section 1983 "creates a species of tort liability" and therefore looked to the common law of torts for guidance. *Id.* The Court concluded that the "common-law cause of action for malicious prosecution provided the closest analogy to claims of the type considered [in Heck] because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Id.* The Court noted that to prove malicious prosecution, it is necessary to establish "**termination of the prior criminal proceeding in favor of the accused**." Id.

In *McDonough v. Smith*, 588 U.S. 109, 139 S. Ct. 2149, 204 L.Ed.2d 506 (2019), the Supreme Court extended the rule announced in *Heck* to ongoing criminal prosecutions holding that a criminal defendant "cannot bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." Id. at 2158. "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of Heck, will the statute of limitations begin to run." Id. at 2157-58.

In *Brown v. City of Houston,* 297 F.Supp.3d 748 (2017), the Court, the U.S. District Court for the Southern District of Texas, addressed the issue of the statute

of limitations with respect to Brady claims, holding that "the § 1983 claims the plaintiff asserts based on the suppression of the phone records go to the very heart of his claim of innocence and thus to the substantive validity of his conviction. Those § 1983 claims were barred until the State declined to re-prosecute and the trial court **dismissed the charges** against him. That is when his § 1983 claims accrued and the statute of limitations began to run." *Id*., at 763.

And the same is applicable to Appellant's Monell claims. Supervisory liability claims under Monell require an underlying constitutional violation and, where the underlying violation is barred by Heck, it cannot form the basis for a derivative Monell claim. *Williams v. Town of Delhi*, No. CIV.A. 14-00043, 2015 WL 868746, at *7 (W.D. La. Feb. 27, 2015). Under the Heck doctrine, when a plaintiff sues the arresting officers and their supervisors, "the district court must first 'consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.' " *Connors v. Graves,* 538 F.3d 373, 376 (5th Cir. 2008) (quoting *Hainze v. Richards,* 207 F.3d 795, 798 (5th Cir. 2000)). Further, "a claim is barred by Heck if the plaintiff's factual allegations supporting the claim are necessarily inconsistent with the validity of the conviction." *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020). Therefore, the accrual date for all of Appellant's § 1983 claims started the day Appellant's criminal proceedings were dismissed in his favor, which was on July 29, 2022. ROA.602.

# CONCLUSION

The district court's rulings reflect a series of abuses of discretion that, taken together, deprived Appellant—a pro se litigant—of a fair opportunity to pursue his meritorious claims. By denying default judgment and motions to strike, the court rewarded strategic delay and disregarded Rule 15's requirement that only live pleadings be addressed. Allowing Harris County and Kim Ogg to litigate against an incomplete complaint, while overlooking their procedural defaults, further shifted the burden of a clerical error onto Appellant. The denial of leave to amend, without explanation, foreclosed viable Ex parte Young claims challenging unconstitutional state practices, contrary to Rule 15's liberal standard.

The prejudice was compounded when the court extended an unwarranted discovery stay to non-immune, defaulting parties like Houston and Winkler, depriving Appellant of critical evidence. At the March 20, 2025 hearing, Appellant was denied due process: the court refused to consider complaint-referenced exhibits, cut off Appellant's presentation, barred rebuttal of factual misstatements, and then incorporated those misstatements into its dismissal order.

Finally, the sua sponte dismissal of Appellant's § 1983 claims rested on errors of law, including application of an overruled "favorable termination" requirement, invocation of a waived statute of limitations defense, and miscalculation of accrual contrary to Heck, McDonough, and Thompson. These cumulative errors

undermined fair adjudication and forced Appellant to expend resources correcting procedural defects not of his making.

Appellant acknowledges the difficulty of litigating as a pro se party, but the rules must apply evenhandedly. It is one thing for defendants to employ tactics designed to gain advantage; it is quite another to do so by disregarding established rules without consequence. The district court's tolerance of such conduct denied Appellant the fair process guaranteed by law.

## Prayer for Relief

For the foregoing reasons, Appellant respectfully requests that this Court:

1. Reverse the district court's denial of Appellant's motions for default judgment and/or to strike the Rule 12(b)(6) motions filed by Appellees City of Houston and Floyd Winkler, and **enter** default judgment against them for their willful failure to respond to the operative complaint, or, in the alternative, strike their defective motions as moot under Rule 12(f), without permitting further Rule 12(b)(6) motions, as their defaults constitute a waiver of such defenses.

2. Reverse the district court's grant of dismissal in favor of Appellees Harris County and Kim Ogg, and strike their Rule 12(b)(6) motions as procedurally improper for addressing an incomplete complaint, without granting leave to file new Rule 12(b)(6) motions, as their failure to respond to the served operative complaint under Rule 15(a)(3) and Rule 8(b) warrants default.

3. Reverse the district court's denial of Appellant's motion for leave to amend the complaint, and grant leave to file the Third Amended Complaint to include *Ex parte Young* claims, ensuring adjudication of Appellant's constitutional challenges on their merits.

4. Reverse the district court's grant of a stay of discovery as to Appellees City of Houston and Floyd Winkler, and **lift the stay**, as they neither requested it nor demonstrated good cause under Rule 26(c), and their default precludes procedural protections.

5. **Vacate** the district court's March 27, 2025, dismissal of Appellant's § 1983 claims, as it was based on improper sua sponte grounds, an overruled favorable termination requirement, an erroneously raised statute of limitations defense, and a miscalculated accrual date, and **remand** for further proceedings consistent with this Court's rulings.

6. **Order** the district court to issue a pretrial scheduling order pursuant to Local Rule 16 of the Southern District of Texas on remand, to ensure orderly case management and prevent further prejudice to Appellant as a pro se litigant.

7. **Grant** any other relief to which Appellant may be entitled, including costs and fees associated with this appeal, to ensure justice for a pro se litigant prejudiced by the district court's procedural errors.

Respectfully Submitted,



Tracy B. Brown
Appellant, Pro Se
3814 Pebble Garden Ln
Katy, Texas 77449

**CERTIFICATE OF COMPLIANCE**

I, Tracy Brian Brown, undersigned, certify that this brief complies with the type volume limitation of Fed. R. App. P. 32(d)(a)(7) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 12,998 words, as determined by Microsoft Office Home & Business 2021, Word processing software.

This document also complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Home & Business 2021in Times New Roman (14-point).

Dated: October 1, 2025.

CERTIFICATE OF SERVICE

I hereby certify that on this the 1 day of October 2025, pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing appellate brief was filed and served upon all the Appellees in this suit by email, and service through PACER.

TRACY BROWN